ATTORNEY FOR APPELLANT

Michael L. Schultz
Parr Richey Obremskey Frandsen &
Patterson LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ZURICH AMERICAN INSURANCE
COMPANY

Kyle A. Lansberry
Lewis S. Wooton
Michael R. Giordano
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ROADSAFE HOLDINGS, INC.

T. Allon Renfro
Swanson, Martin & Bell, LLP
Chicago, Illinois

Robert P. Conlon
Joyce F. Noyes
Walker Wilcox Matousek LLP
Chicago, Illinois



FILED

Mar 28 2017, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Walsh Construction Company,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Zurich American Insurance<br>Company,<br>*Appellee-Defendant,* | March 28, 2017<br><br>Court of Appeals Case No.<br>45A04-1606-PL-1284<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable William E. Davis,<br>Judge<br><br>Trial Court Cause No.<br>45D05-1506-PL-43 |

and

Roadsafe Holdings, Inc. d/b/a
Roadsafe Traffic Systems, Inc.,
*Appellee-Intervener.*

**Najam, Judge.**

# Statement of the Case

Walsh Construction Company ("Walsh") appeals the trial court's entry of summary judgment in favor of Zurich American Insurance Company ("Zurich") on Walsh's complaint for declaratory judgment. Walsh raises three issues for our review, which we consolidate and restate as whether the trial court erred when it entered summary judgment for Zurich. As a matter of first impression, we hold that a self insured retention endorsement to a commercial general liability insurance policy requires the named insured to satisfy the amount of the endorsement, whether on its own behalf or on behalf of an additional insured, before the additional insured may seek to enforce the policy against the insurer. As that has not occurred here, we affirm the trial court's entry of summary judgment for Zurich.

# Facts and Procedural History

In January of 2009, Walsh, a general contractor, hired Roadsafe Holdings, Inc. d/b/a Roadsafe Traffic Systems, Inc. ("Roadsafe") to be Walsh's subcontractor in the construction of a traffic exchange involving Interstates 65 and 80 in Lake

County. Roadsafe's work obligations included providing a safe traffic pattern through the work zone. Walsh's contract with Roadsafe required Roadsafe to indemnify Walsh for any liability resulting from Roadsafe's failure or negligence in its work. Accordingly, Walsh's contract required Roadsafe to procure a commercial general liability insurance policy ("CGL policy") that named Walsh as an additional insured on a primary and noncontributory basis.

[3] Roadsafe obtained its CGL policy from Zurich. The CGL policy defined Roadsafe as the "Named Insured" and stated that, "[t]hroughout this policy[,] the words 'you' and 'your' refer to the Named Insured . . . . The word 'insured' means any person or organization qualifying as such under Section II—Who Is An Insured." Appellant's App. Vol. 3 at 72. An endorsement attached to the CGL policy named as additional insureds any "person and organization where required by written contract," such as Roadsafe's contract with Walsh, "but only with respect to liability for 'bodily injury' . . . by your [Roadsafe's] acts or omissions . . . ." Id. at 99. The CGL policy then provided as follows: "We [Zurich] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." Id. at 72.

[4] However, Roadsafe also obtained a $500,000-per-occurrence self insured retention endorsement ("the SIR endorsement") to the CGL policy. The SIR endorsement amended the CGL policy as follows:

*The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:*

1. Self Insured Retention and Defense Costs—Your Obligations

    A. The "self insured retention" amounts stated . . . apply as follows:

        1. *If a Per Occurrence Self Insured Retention Amount is shown in this endorsement, you shall be responsible for payment of all damages and "pro rata defense costs" for each "occurrence"[] until you have paid damages equal to the Per Occurrence amount . . . .*

* * *

    B. Defense Costs

        Except for any "defense costs" that we may elect to pay, you shall pay "pro rata defense costs" as they are incurred . . . .

    C. Settlement of Claim

        1. Within Self Insured Retention

        If any final judgment or settlement is less than the "self insurance retention" indicated . . . above, you shall have the right and obligation to settle all such claims or suits . . . .

2. Excess of Self Insured Retention

You may not settle any claim or suit which exceeds any "self insured retention" amount indicated . . . without our written permission to do so. . . .

\* \* \*

H. Compliance

*Compliance with the requirements set forth in this endorsement is a condition precedent to coverage. . . .*

II. Our Rights and Obligations Excess of the Self Insured Retention

\* \* \*

B. Damages Excess of Self Insured Retention—Per Occurrence or Per Claim

We shall be liable only for the amounts of our share of "pro rata defense costs" and damages in excess of the "self insured retention" amounts . . . above . . . .

\* \* \*

D. Settlement of Claims

1. Within Self Insured Retention

We shall have, at our option, the right but not the obligation or duty[] to negotiate the settlement of any claim within the applicable "self insured retention" amount, which in our opinion is deemed expedient. But we shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the "self insured retention" amount. . . .

2. Excess of Self Insured Retention

With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown . . . we have the right and duty to negotiate the settlement of such claim and may pay any or all damages and "defense costs" on your behalf, both within and excess of the applicable "self insured retention" amount. Any such payments made by us for damages or "defense costs" within the "self insured retention" amount shall be reimbursed promptly by you.

Definitions—

A. "Self insured retention" means:

the amount or amounts which *you or any insured* must pay for all compensatory damages and "pro rata defense costs" which *you or any insured shall become legally obligated to pay because of damages arising from any coverage included in the policy*.

* * *

D. "Occurrence[,]" for purposes of this endorsement only, means an "occurrence[,]" offense, accident, act, error or omission[,] or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.

*Id.* at 68-71 (emphases added).

[5] On June 15, 2009, Boguslaw Maczuga was injured while operating his motor vehicle through the work zone's traffic pattern. On June 27, 2011, Maczuga served Walsh with a Second Amended Complaint in which Maczuga alleged that Walsh had negligently created an unsafe traffic pattern.[1] As a result of Maczuga's complaint, on January 18, 2012, Walsh filed a third-party complaint against Roadsafe. In its complaint, Walsh alleged, in relevant part, that Roadsafe had failed to indemnify Walsh and that Roadsafe had breached its contract with Walsh. Specifically, Walsh's third-party complaint stated that "[t]he *Maczuga* lawsuit seeks recovery from Walsh for its alleged negligence in connection with work that was to be performed by Road[s]afe" and that, "[f]ollowing service of process of the *Maczuga* lawsuit, Walsh tendered its defense and indemnity to Road[s]afe" but Roadsafe had "failed to either agree to indemnify or undertake Walsh's defense." Appellant's App. Vol. 2 at 54-55.

---

[1] Maczuga's complaint did not state a sum certain that he sought in relief.

Thereafter, Walsh notified Zurich, pursuant to the terms of the CGL policy, of Maczuga's lawsuit and requested that Zurich defend Walsh in that suit. Zurich denied Walsh's request, and Walsh filed a complaint for declaratory judgment against Zurich in which Walsh alleged that Zurich had a duty to defend and indemnify Walsh. *Id.* at 61-62. Roadsafe intervened in the declaratory judgment action, and the parties moved for summary judgment. After a hearing, the trial court entered summary judgment for Zurich, stating:

> Zurich has no contractual obligation to cover Walsh as an additional insured at this time. First of all, the policy is a liability policy between Zurich and Roadsafe and no person or entity has sued or even made a claim against Roadsafe for any type of negligence. Also there is a [SIR endorsement] that requires the insured to pay the first $500,000.00 of costs and damages of any claim before Zurich becomes obligated to pay out on the policy. Since there has been no claim for negligence against Roadsafe, Roadsafe has paid nothing and has made no claim under the policy.

*Id.* at 7. This appeal ensued.

## Discussion and Decision

Walsh appeals the trial court's entry of summary judgment for Zurich. Our standard of review is clear:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v.*

*Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[8]   Moreover, this appeal requires the interpretation of a contract. Interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). As such, cases involving contract interpretation are particularly appropriate for summary judgment. *Id.* And because the interpretation of a contract presents a question of law, it is reviewed de novo by this court. *Jenkins v. S. Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*. We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt

to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless."[2] *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). "And, in reading the terms of a contract together, we keep in mind that the more specific terms control over any inconsistent general statements." *DLZ Ind., LLC v. Greene Cty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009).

[9] The question presented in this appeal is whether the SIR endorsement amended Zurich's obligation under the CGL policy to defend Walsh.[3] Again, under the CGL policy Zurich agreed to "pay those sums that *the insured* becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies," which imposed upon Zurich "the right and duty to defend the insured against any 'suit' seeking those damages." Appellant's App. Vol. 3 at 72 (emphasis added). On appeal, Walsh and Roadsafe both argue that the SIR endorsement amends only Zurich's relationship to Roadsafe and that it

---

[2] We reject Walsh's characterization of the SIR endorsement as "exclusionary." Appellant's Br. at 15-16. In any event, as explained below we conclude that the SIR endorsement is unambiguous.

[3] The trial court concluded that "no person or entity has sued or . . . made a claim against Roadsafe for any type of negligence," and Roadsafe argues on appeal that we should affirm the trial court's entry of summary judgment on that basis. Appellant's App. Vol. 2 at 7. We cannot agree. Walsh's third-party complaint against Roadsafe alleged that the underlying and allegedly negligent acts were Roadsafe's and, as such, that Roadsafe had a duty to indemnify Walsh. In other words, Walsh's third-party complaint seeks to transfer any liability under Maczuga's original claim of negligence from Walsh to Roadsafe and expressly does so on the basis that the underlying and allegedly negligent acts were Roadsafe's. Accordingly, we reject Roadsafe's argument on appeal that we should affirm the trial court's entry of summary judgment on that basis. Similarly, we also reject Roadsafe's argument that Walsh has not sufficiently alleged negligence on the part of Roadsafe for Walsh to have standing under the CGL policy as an additional insured. With respect to both of those arguments, Walsh's third-party complaint against Roadsafe is sufficient for Walsh to invoke the CGL policy and its endorsements.

does not amend Zurich's obligations under the CGL policy with respect to Walsh. Zurich, on the other hand, contends that the SIR amount must be satisfied before Zurich can have any obligations under the CGL policy. We conclude that Zurich's reading of the SIR endorsement properly harmonizes the totality of that document's language and applies the SIR endorsement as it was intended to be applied.

[10] We have discussed SIR endorsements before, noting in particular the following:

> There are key differences between . . . deductible[s], which generally exist in primary policies, and retained amounts, which generally are found in umbrella policies or policies designed to be excess of a self-insured amount. One difference is that while a deductible is subtracted from a policy's limits, thereby reducing an insurer's total obligation to the insured, the full limits of a policy including a retained amount are available to the insured once that amount has been satisfied. *See* Douglas R. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance and Self-Insurance*, 22 Pepp. L. Rev. 1373, 1449 (1995). Another key difference is that in a policy with a deductible, the insurer retains complete control of claims handling; in a policy with a retained amount, the insurer has no claims handling responsibility, particularly with respect to claims not exceeding the retained amount. *See id.*

*Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d 485, 495 (Ind. Ct. App. 2004) (footnote omitted). Similarly, we have noted that

> a policy with a deductible obliges the insurer to respond to a claim from "dollar one" (i.e., immediately upon tender), subject to the insurer's right to later recoup the amount of the deductible from the insured. A policy subject to a SIR, in contrast, obliges

the policyholder itself to absorb expenses up to the amount of the SIR, at which point the insurer's obligation is triggered.

*Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 410 n.2 (Ind. Ct. App. 2008) (quotation marks and alterations omitted), *trans. denied*. Not surprisingly, "[a]n insured maintains a SIR in order to reduce the cost of premiums on its insurance policy." Susan N.K. Gummow, *No "SIR"! Insurer Can't Avoid Payment If Insured Files For Bankruptcy*, Am. Bankr. Inst. J., Apr. 2005, at 18.

[11] Both the Indiana Supreme Court and this court have repeatedly recognized that, as between an insurer and a single insured, the insurer's responsibilities arise only "[a]fter the self-insured retention amounts specified in the policies are satisfied." *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 576-77 (Ind. 2007); *see also Thomson Inc. v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 1010-11 (Ind. Ct. App. 2014) (requiring the insured to show that "the SIR for each 'occurrence' has been satisfied before any of [the insurer's] obligations . . . are triggered"), *trans. denied*. We have also held that "it is the responsibility of the policyholder to prove this condition precedent to coverage—SIR exhaustion—and unless and until it is able to do so, the duty to defend is not triggered." *Allianz*, 884 N.E.2d at 420; *see also Monroe Guar.*, 816 N.E.2d 495-96 (holding that coverage is available to the insured once the SIR has been satisfied). But the question of whether a SIR endorsement applies

only to the insurer's relationship to the named insured or also applies to additional insureds is a question of first impression for our courts.[4]

[12] In light of the plain language of the instant CGL policy and SIR endorsement, we agree with Zurich that it has no obligation to Walsh under the CGL policy until the $500,000 SIR amount has been satisfied.[5] "Self insured retention" is defined within the SIR endorsement as "the amount or amounts which *you or any insured must pay* for all compensatory damages and 'pro rata defense costs' which *you or any insured* shall become legally obligated to pay because of damages arising from any coverage included in the policy." Appellant's App. Vol. 3 at 71. Thus, substituting the endorsement and policy definitions where appropriate, the SIR endorsement obliges the named insured as follows:

> If a Per Occurrence [amount that the named insured or any additional insured must pay] is shown . . . , [the named insured] shall be responsible for payment of all damages and "pro rata

---

[4] Further, none of the foreign authority cited by the parties is on all fours with the instant appeal. *See Forecast Homes, Inc. v. Steadfast Ins. Co.*, 105 Cal. Rptr. 3d 200, 203 (Cal. Ct. App. 2010) (identifying the issue on appeal as whether an additional insured could invoke an insurer's obligation to defend by paying the SIR amounts in lieu of the named insured paying those amounts); *FHP Tectonics Corp. v. Am. Home Assurance Co.*, 57 N.E.3d 575, 584 (Ill. App. Ct. 2016) (concluding that the SIR endorsement, which stated that the insurer would "pay on behalf of the Insured," applied to both the named insured and additional insureds); *Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co.*, 796 N.E.2d 1133, 1143-44 (Ill. App. Ct. 2003) (stating in *dicta* and based on a highly limited review of the SIR endorsement's language that that endorsement "refers only to the named insured . . . and not to additional insureds . . . ."); *see also Sherwood Constr. Co. v. Am. Home Assurance Co.*, No. CIV-09-1395-HE, 2011 WL 6012605, at *4-5 (W.D. Okla. 2011) (reaching the same conclusion reached in *FHP Tectonics*).

[5] We reject Zurich's suggestion that the SIR endorsement nullifies the fact that Roadsafe is the named insured and Walsh is an additional insured under the CGL policy. To the contrary, the SIR endorsement expressly recognizes "you or any insured," that is, both the named insured and any additional insureds. Appellant's App. Vol. 3 at 71.

> defense costs" for each "occurrence"[] until [the named insured] ha[s] paid damages equal to the Per Occurrence Amount . . . .

*Id.* at 68. In other words, the SIR endorsement shifts the initial cost burden from Zurich to Roadsafe, the named insured, not just for Roadsafe's damages and defense costs but also for any additional insured's damages and defense costs. As such, the SIR endorsement amends Zurich's obligation under the CGL policy to defend Walsh by placing the first $500,000 of that burden on Roadsafe.

[13] This plain reading of the SIR endorsement is supported by its other provisions. In particular, in other places the SIR endorsement relies on the relationship between Zurich and Roadsafe exclusively and without concern for additional insureds, which is consistent with the SIR endorsement having placed the burden to defend additional insureds on Roadsafe. For example, the SIR endorsement states that: "you [Roadsafe] shall pay 'pro rata defense costs' as they are incurred . . ."; "you [Roadsafe] shall have the right and obligation to settle" claims within the SIR amount, but "[y]ou [Roadsafe] may not settle any claim or suit which exceeds" the SIR amount; and "[w]e [Zurich] shall be liable only for the amounts of our share of 'pro rata defense costs' and damages in excess of" the SIR amount. *Id.* at 69-70.

[14] Further, the SIR endorsement unambiguously conditions Roadsafe's compliance with its provisions as a "condition precedent to coverage" from Zurich. *Id.* at 70. And there is no rational basis to apply the SIR endorsement as a condition precedent to Zurich's coverage of the named insured but not to

Zurich's coverage of additional insureds. Moreover, the SIR endorsement prioritizes its obligations and definitions over any other provision of or endorsement to the CGL policy, stating that, "in the event of conflict with any other provisions elsewhere in this policy," the SIR endorsement "shall control the application of the insurance to which this endorsement applies." *Id.* at 68. And the SIR endorsement enabled Roadsafe to obtain the CGL policy from Zurich at a reduced premium. Taken together, those provisions unambiguously manifest the intent of the parties to the contracts, Zurich and Roadsafe, for the SIR endorsement to control their relationship such that Roadsafe assumed all costs and liability for the first $500,000 of any claim that might be made under the CGL policy, regardless of whether that claim was against Roadsafe or an additional insured.

[15] Nonetheless, Walsh asserts that the following language conflicts with Zurich's duty to defend or, in the alternative, creates an ambiguity in the SIR endorsement that precludes summary judgment for Zurich and requires summary judgment for Walsh:

> D. Settlement of Claims
>
> * * *
>
> 2. Excess of Self Insured Retention
>
> > With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown . . . we have the right

> and duty to negotiate the settlement of such claim and may pay any or all damages and "defense costs" on your behalf, both within and excess of the applicable "self insured retention" amount. Any such payments made by us for damages or "defense costs" within the "self insured retention" amount shall be reimbursed promptly by you.

*Id.* at 71. According to Walsh, this provision "would be rendered meaningless" by Zurich's reading of the SIR endorsement. Appellant's Br. at 12.

[16] We cannot agree with Walsh that that language, which pertains to Zurich's settlement obligations when a claim may exceed the SIR amount, has any application on these facts. Walsh has not requested declaratory relief with respect to Zurich's potential obligation to negotiate a settlement. Rather, Walsh has sought declaratory relief only with respect to whether Zurich owes Walsh a duty to defend and a duty to provide indemnification. *See* Appellant's App. Vol. 2 at 61-62. The language relied on by Walsh creates no such affirmative duties.

[17] We also reject Walsh's argument that, "[i]f Zurich's duty to provide coverage to Walsh . . . is conditioned upon Roadsafe satisfying its $500,000 SIR amount, then the [CGL p]olicy by definition cannot be primary as to Walsh." Appellant's Br. at 12. Walsh is still a primary insured under the CGL policy

and has no less status than any other primary insured.[6]  If Walsh disapproves of its subcontractors obtaining SIR endorsements, Walsh can manage its contractual relationships with its subcontractors accordingly.[7]

[18]  In sum, we hold that, under the plain language of the SIR endorsement, Zurich has no obligation under the CGL policy to defend or indemnify Walsh until Roadsafe has satisfied the $500,000 SIR amount.  Accordingly, we affirm the trial court's entry of summary judgment for Zurich.

[19]  Affirmed.

Bailey, J., and May, J., concur.

---

[6] Walsh also asserts that, given our reading of the SIR endorsement, a genuine issue of material fact exists that precludes the entry of summary judgment because Zurich has not designated any evidence to demonstrate that Roadsafe has not satisfied the SIR amount.  We do not accept this argument.  There is no dispute on this record that Roadsafe has failed to defend or indemnify Walsh in the *Maczuga* case.  Indeed, that undisputed fact is the basis for Walsh's third-party complaint against Roadsafe as well as Walsh's attempt to seek relief from Zurich in these declaratory judgment proceedings, and Zurich designated both of those complaints in support of its motion for summary judgment in the instant case.

[7] Though not relevant in light of the plain language of the SIR endorsement, we note that Walsh's contract with Roadsafe required Roadsafe to be "responsible for any . . . self-insured retention with respect to coverage afforded Additional Insureds."  Appellant's App. Vol. 4 at 16.