FILED

Sep 12 2025, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Court of Appeals of Indiana

Northern Indiana Public Service Company, LLC,

*Appellant/Cross-Appellee-Plaintiff*

v.

ACE American Insurance Company, Safway Services, LLC,
and Headwaters Resources, Inc.,

*Appellees/Cross-Appellants-Defendants*

---

September 12, 2025

Court of Appeals Case No.
24A-PL-512

Appeal from the Marion Superior Court

The Honorable Heather A. Welch, Judge

Trial Court Cause No.
49D01-1607-PL-24617

---

**Opinion by Judge Kenworthy**

Judges Mathias and Brown concur.

**Kenworthy, Judge.**

## Case Summary

[1] Northern Indiana Public Service Company, LLC ("NIPSCO") sued for declaratory relief and breach of contract after Safway Services, LLC ("Safway") and its insurer, ACE American Insurance Company ("ACE"), ceased defending and denied indemnification of NIPSCO in a now-settled workplace injury lawsuit.[1] NIPSCO moved for partial summary judgment on the issues of whether Safway breached its contractual duties to ensure a safe workplace and whether Safway and ACE breached their duties to defend and indemnify NIPSCO. In turn, Safway and ACE sought summary judgment on all issues.

[2] The trial court entered partial summary judgment for NIPSCO, finding Safway breached its contractual duty to defend NIPSCO. NIPSCO then moved for three categories of damages arising from Safway's breach: (1) the defense costs NIPSCO incurred in the underlying lawsuit after Safway stopped paying for

---

[1] NIPSCO also asserted claims against Headwaters Resources, Inc. ("Headwaters"). Since 2001, NIPSCO had a marketing contract with Headwaters for coal combustion productions (fly ash). Headwaters is unrelated to Safway, but coincidentally, was also insured by ACE at the relevant times. During the pendency of this appeal, NIPSCO, Headwaters, and ACE settled the Headwaters-related claims, and on February 3, 2025, we granted the parties' motion to dismiss: (1) NIPSCO's appeal against Headwaters, (2) Headwaters' cross-appeal against NIPSCO, (3) NIPSCO's appeal against ACE for issues relating to ACE's obligations under the ACE-Headwaters insurance policy, and (4) ACE's cross-appeal against NIPSCO for issues relating to obligations under the ACE-Headwaters policy. We discuss the facts pertaining to Headwaters only when they give context to the remaining claims on appeal.

NIPSCO's defense, (2) the nearly $3 million NIPSCO paid to settle the underlying lawsuit, and (3) the attorney fees NIPSCO incurred in bringing this action to enforce Safway's contractual obligations. The trial court denied NIPSCO recovery of the settlement but awarded NIPSCO its defense costs and attorney fees in both actions, plus prejudgment interest on each, and held Safway and Headwaters jointly and severally liable for the damages. As to ACE, the trial court determined the insurer was liable under its policy for damages assessed against Safway.

[3] In this consolidated appeal, the parties present the following restated and reordered issues:

1. Did the trial court err in granting NIPSCO summary judgment on its claim Safway owed and breached its duty to defend NIPSCO in the underlying lawsuit?

2. Was NIPSCO entitled to recover the settlement payment under the theory of collateral estoppel or as a consequential damage for Safway's breach?

3. Did the trial court clearly err in holding Safway liable for all defense costs incurred in the underlying lawsuit, rather than apportioning them between potential indemnitors?

4. Did the trial court clearly err in awarding NIPSCO the attorney fees it incurred in this action, either as a defense cost or under a contractual fee-shifting provision?

5. Did the trial court clearly err in holding ACE liable for the awarded damages under its insurance policy with Safway?

[4] We affirm in part, reverse in part, and remand.

## Facts and Procedural History

### A. Safway Agreement

[5] At all relevant times, NIPSCO owned and operated Bailly Generating Station, a power plant in Chesterton, Indiana. In 2006, NIPSCO and Safway entered into a General Services Agreement for Construction, Maintenance, Services, and Materials (the "Safway Agreement"). As to defense and indemnification, the contract provides:

> (a) To the fullest extent permitted by law, [Safway] waives any right of contribution and agrees to indemnify, defend and hold harmless [NIPSCO] from and against all claims, damages, losses, fines, penalties and expenses, including attorneys' fees, related in any way to (i) any breach of this Agreement by [Safway]; or (ii) [Safway's] or its Subcontractors' or agents' performance of the Work[2] (collectively, "Claims"), provided that any such Claims in subsection (a)(ii) above are caused in whole or in part by any negligent act or omission of [Safway], any Subcontractor or any of its respective direct or indirect employees or agents for whose acts any of them may be liable. Such obligation shall not negate, abridge, or otherwise reduce any other right or obligation of indemnity or contribution in favor of [NIPSCO]. Such obligation to indemnify, defend and hold harmless shall not be limited in any way by any limitation on the amount or

---

[2] The contract defines "Work" as "the goods, maintenance, construction, or services described in Contract Documents for specific Projects and includes all supervision, labor, material, tools, equipment and shipping necessary to complete the Project." *Appellant's App. Vol. 2* at 205. "Project" means "the Work as described in separate Purchase Orders, Project Authorizations, Service Authorizations, Work Authorizations, or as otherwise described in an exhibit[.]" *Id.* at 202. Interpretation of these definitions is not at issue.

type of damages, compensation, benefits or insurance proceeds payable by, for or to [Safway] or anyone directly or indirectly employed by [Safway]. The obligations of [Safway] under this Agreement shall not extend to the liability of [NIPSCO] arising out of [NIPSCO's] negligence. [Safway] shall impose identical indemnification, defense and hold harmless obligations upon all Subcontractors.

*Appellant's App. Vol. 2* at 208.[3] As to its safety obligations, Safway agreed to "be in control of and responsible for all construction means, methods, procedures, sequences, and job site safety[.]" *Id.* at 210. By the Safway Agreement, NIPSCO also delegated to Safway responsibility for "the prevention of accidents and for conducting site inspections and enforcing compliance with all safety and health programs[.]" *Id.* at 214.

[6] The Safway Agreement also required Safway to obtain commercial general liability insurance with $2 million bodily injury and property damage combined single limit per occurrence and to name NIPSCO as an additional insured under the policy. Safway obtained a policy with ACE for the period of October 1, 2007, to October 1, 2008 (the "ACE-Safway Policy"). The policy provided ACE would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." *Appellant's App. Vol. 3* at 11. The policy had a $5 million each occurrence limit and $5 million general aggregate limit. "In consideration of a reduced or

---

[3] This entire paragraph appears in the Safway Agreement in bold typeface, which we have removed for readability.

adjusted premium," Safway agreed to a $2 million deductible per occurrence. *Id.* at 41. Under the high-deductible endorsement, Safway's claim service organization would provide the defense of all claims or suits arising under the policy, ACE "shall not have any duty to defend any such 'suit,'" and ACE would have no duty to pay any defense cost within the deductible amount. *Id*. Two endorsements provided NIPSCO coverage as an additional insured.

## B. Underlying Lawsuit

[7] In 2008, NIPSCO hired Safway to build scaffolding at the Bailly plant to facilitate routine maintenance. Adam Nagel ("Nagel") was an employee of Safway working on a five-person scaffolding build crew. Nagel's job was to retrieve scaffolding parts from a rack, climb a stairway or ladder to a catwalk, and deliver the parts to the crew members building the scaffolding. The parts rack was placed in Safway's work area on the ground near a roadway frequently used by tractor-trailers to haul fly ash out of the plant. On the afternoon of April 8, 2008, Nagel descended from the catwalk to retrieve a part but never returned. His coworkers soon found him lying on the ground, unconscious, with severe injuries to his head and chest. There were no witnesses. Nagel was in a coma for several weeks and sustained permanent injuries. An Indiana Occupational Safety and Health Administration investigation closed because of lack of evidence or witnesses as to how Nagel had been injured.

[8] Nagel and his then-wife, Emily Nagel, sued NIPSCO in late 2009 for Nagel's injuries and Emily's loss of consortium (the "underlying lawsuit"), alleging

Nagel was injured by "a vehicle, a piece of equipment, and/or other instrumentality while working at the Bailly Plant" which were "allowed to be used or employed at or very near the scaffold being erected by Safway[.]" *Appellant's App. Vol. 5* at 36. Worker's compensation was Nagel's sole remedy against Safway, and the Nagels did not name Safway as a defendant. *See* Ind. Code art. 22-3 (Worker's Compensation System). The Nagels' complaint against NIPSCO was based on negligence, alleging NIPSCO breached its duties to maintain the safety of its workplace, protect the safety of the workers and contractors at the Bailly Plant, and ensure the safe and proper movement of all vehicles, equipment, or other instrumentalities at the facility, which proximately caused the Nagels' injuries. In response, NIPSCO raised the affirmative defense of contributory fault and asserted any damages were caused by Nagel, Safway, or unknown nonparties.

[9] NIPSCO tendered its defense and indemnity to Safway and ACE. ACE agreed NIPSCO may qualify as an additional insured under the ACE-Safway Policy, based on "the allegations made to date . . . that Safway employee, Adam Nagel, fell from scaffolding, resulting in injury." *Appellant's App. Vol. 5* at 126. But ACE reserved its right to later deny NIPSCO indemnity coverage. ACE also informed NIPSCO the ACE-Safway Policy contained no duty for ACE to defend NIPSCO, instead allocating the defense to Safway's claim service organization. Safway agreed to defend NIPSCO in the underlying lawsuit, and for the next seven years or so of litigation, Safway paid for NIPSCO's defense.

[10] In 2010, Nagel responded to interrogatories stating he had "islands of memory" and recalled being "struck by a truck" when working on and around the scaffolding and adjacent worksite. *Appellants App. Vol. 8* at 196–97. In a 2011 deposition, Nagel described bending over the rack to retrieve a part and catching a glimpse of a truck tire passing behind him before feeling what he thought was a trailer deck strike him. Through discovery, the parties determined the only truck that may have been in the vicinity at the time was owned by Whitcomb Trucking, Inc. ("Whitcomb") and carrying a load of fly ash on behalf of MCS Trucking, Inc. ("MCS"), a subcontractor of Headwaters. But by that time, the statute of limitations barred the Nagels from adding claims against Whitcomb, MCS, or Headwaters so the case proceeded with NIPSCO as the only defendant.

[11] NIPSCO eventually moved for summary judgment on the issue of liability, arguing there was no theory under which NIPSCO owed Nagel a duty of care. The trial court granted NIPSCO's motion; effectively, NIPSCO won the case.

## C. Appeal and Remand

[12] The Nagels appealed, and in a published opinion, this Court reversed in part the trial court's grant of summary judgment. *Nagel v. N. Ind. Pub. Serv. Co.*, 26 N.E.3d 30 (Ind. Ct. App. 2015), *trans. denied* ("the *Nagel* opinion"). In doing so, the Court made three holdings concerning the duty NIPSCO owed Nagel. First, the Court determined the Nagels' complaint stated no claim that NIPSCO was vicariously liable for the negligence of an independent contractor, such as Safway. *Id*. at 43. Next, based on prior case law, the Court held NIPSCO as a

matter of law did not assume a duty of care to Nagel through the Safway Agreement and other safety-related documents. *Id*. (citing *Marks v. N. Ind. Pub. Serv. Co.*, 954 N.E.2d 948 (Ind. Ct. App. 2011)). Last, the Court determined the complaint alleged Nagel's injuries were at least partially related to the condition of the land owned by NIPSCO, thereby raising an issue of premises liability. *Id*. After reviewing the designated evidence, the Court determined "whether Safway or NIPSCO was in control of the premises when and where [Nagel] was injured is unclear and must be resolved by a jury." *Id*. at 46. The Court also held there was a question of fact as to the obviousness of the danger of having the parts rack so close to the road. *Id*. And because there were genuine issues of material fact, the Court held the trial court improvidently granted NIPSCO summary judgment on the basis it did not owe Nagel a duty of care. *Id*.

[13] On remand, the case proceeded toward trial on the narrowed claims, with a court-ordered mediation scheduled for Monday, March 21, 2016. At that point, the Nagels were seeking damages of approximately $13 million. On Friday, March 18, ACE sent NIPSCO a letter "tender[ing] this claim back to [NIPSCO] for defense and indemnity," triggering Safway to terminate its defense of NIPSCO. *Appellant's App. Vol. 5* at 132. ACE gave two reasons for the reversal: Nagel's 2011 deposition testimony that he was injured when hit by a truck and the *Nagel* opinion issued fourteen months prior. ACE reasoned the *Nagel* opinion "alter[ed] the factual and liability issues presented in this matter" by holding "the only remaining liability issues in the case were NIPSCO's

premises liability." *Id.* And because "there are no claims of negligence against Safway or any claims of negligence arising out of Safway's activities," ACE maintained Safway was not required to indemnify NIPSCO under the Safway Agreement. *Id.* Accordingly, ACE concluded "NIPSCO neither qualifies as an additional [insured] under the policy nor are the allegations made against NIPSCO covered by the . . . policy." *Id.*

[14] With trial approaching, NIPSCO began paying for its own defense. NIPSCO also reasserted its defense and indemnification requests to Safway and ACE, but neither party paid any further defense costs or agreed to indemnify NIPSCO. Neither Safway nor ACE sought declaratory relief as to their contractual obligations.

[15] In late November 2016, NIPSCO settled with the Nagels for $3.5 million. In so doing, NIPSCO denied any liability. Before settling, NIPSCO sought Safway and ACE's consent but received no response. ACE later contributed $500,000 to the settlement under its insurance policy with Headwaters, subject to a reservation of rights to pursue recovery of that amount, and NIPSCO reserved its rights to pursue additional amounts from ACE.

### D. Instant Action

[16] In July 2016—a few months after Safway withdrew from defending NIPSCO but before NIPSCO settled with the Nagels—NIPSCO filed this declaratory judgment and breach of contract action against Safway and ACE, among

others.[4]  In its amended complaint, NIPSCO sought declaratory relief as to the parties' rights and obligations under the Safway Agreement and ACE-Safway Policy.  NIPSCO alleged Safway and ACE breached their contracts with NIPSCO and requested damages including reimbursement of NIPSCO's defense and indemnity costs related to the underlying lawsuit.  NIPSCO also alleged ACE breached its duties of good faith and fair dealing.  ACE counterclaimed against NIPSCO for declaratory relief and raised various claims related to recouping its $500,000 contribution to the underlying lawsuit settlement.

On May 1, 2018, NIPSCO moved for partial summary judgment on (1) Safway's alleged breach of its duties to maintain a safe workplace and defend and indemnify NIPSCO, and (2) ACE's duty to indemnify NIPSCO as an additional insured under the ACE-Safway Policy.[5]  Safway and ACE each filed briefs in opposition to NIPSCO's partial summary judgment motion and cross-moved for summary judgment on all of NIPSCO's claims, with each defendant joining the other's motion.

On August 23, 2021, the trial court entered partial summary judgment for NIPSCO, finding Safway had a duty to defend NIPSCO in the underlying suit

---

[4] The other parties were Headwaters, Indemnity Insurance Company of North America, Whitcomb Trucking, Inc., and ACUITY, A Mutual Insurance Company.  ACE in turn filed a third-party complaint against MCS.  Although not at issue in this appeal, ACE's claims against MCS are still pending in the trial court.

[5] NIPSCO also moved for summary judgment as to Headwaters, which is no longer at issue here.  It did not move for summary judgment on its claims against ACE for breach of its duties of good faith and fair dealing.

after the *Nagel* opinion and breached that duty.[6]  The trial court denied summary judgment on all other claims.  As to NIPSCO's claim that Safway breached its contractual duty to maintain a safe worksite, the trial court found "there remains a genuine issue of material fact as to whether NIPSCO or Safway are responsible for the conditions that led to Nagel's injuries" and "the same issues which prompted the Court of Appeals to overturn summary judgment in the Underlying Suit persist."  *Appellant's App. Vol. 2* at 91.  For the same reason, the trial court denied summary judgment on NIPSCO's indemnity claims against Safway and ACE, observing "whether Safway . . . owes any indemnity obligations under [its agreement] with NIPSCO depends on whether NIPSCO can show that . . . Safway . . . breached [its] safety obligations to NIPSCO that resulted in the damages NIPSCO incurred in settling the Underlying Suit" and "ACE's obligation to indemnify NIPSCO depends on whether NIPSCO can establish [a breach of contract] as well."  *Id.* at 100.  The trial court denied ACE and Safway's cross-motions for summary judgment and urged the parties to try to resolve the issue of damages for Safway's breach of its defense duty.  On the parties' requests, it certified the order for interlocutory appeal, but this Court declined jurisdiction.

[19]  After the parties were unable to come to a resolution on damages, in October 2022, NIPSCO moved for an award of damages for the breach of the duty to

---

[6] The trial court also found Headwaters breached its contractual duty to defend NIPSCO under the NIPSCO-Headwaters agreement.

defend. NIPSCO asked for three categories of damages, plus prejudgment interest on each: (1) NIPSCO's attorney fees and defense costs in the underlying lawsuit after Safway stopped paying for NIPSCO's defense; (2) the underlying lawsuit settlement payment; and (3) NIPSCO's attorney fees incurred in bringing this action to enforce the Safway Agreement. In sum, NIPSCO requested about $7 million (including around $2.5 million in prejudgment interest).

[20] After an evidentiary hearing in November 2023, the trial court declined to award NIPSCO the settlement payment but awarded NIPSCO its attorney fees in the underlying lawsuit and this action plus prejudgment interest on each, for a total award upwards of $2.25 million.[7] The trial court also found Safway and Headwaters were jointly and severally liable for the damages. As for ACE, the trial court determined ACE was obligated to pay the damages on behalf of its policyholders. On NIPSCO's motion, the trial court entered final judgment on the damages award under Trial Rule 54(B).

[21] All parties individually appealed, and on their joint motion, this Court consolidated the appeals and designated NIPSCO the Appellant/Cross-Appellee.

---

[7] The exact amount of the damages awarded is unclear from the trial court's order. The defense costs and interest calculations that appear in the factual findings differ from the sums in the trial court's "order" section by about $285,000. *Compare Appellant's App. Vol. 2* at 112–15 *with id.* at 136–37.

# 1. Safway owed NIPSCO a duty to defend until the resolution of the underlying claim.

[22] The trial court found Safway had a contractual duty to defend NIPSCO in the underlying lawsuit, and Safway breached its duty when it terminated its defense of NIPSCO after the *Nagel* opinion and just before mediation in 2016. In its cross-appeal, Safway contends the trial court erred in granting NIPSCO summary judgment on this issue because Safway had no duty to indemnify NIPSCO for its own negligence under the Safway Agreement, and in the absence of a duty to indemnify, Safway had no duty to defend NIPSCO.[8]

## A. Standards of Review

[23] We review a trial court's summary judgment decision *de novo*, applying the same standard as the trial court. *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 220 (Ind. 2023). In doing so, we consider only the evidence designated to the trial court and draw all reasonable inferences in the non-movant's favor. *Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 863 (Ind. 2022). A party seeking summary judgment must establish that "the designated evidentiary matter shows . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the

---

[8] The trial court did not find ACE breached a duty to defend NIPSCO. Still, ACE raises several arguments about Safway's duty to defend in its cross-appeal and is generally aligned with Safway on this issue, because "ACE, in turn, was held liable to pay [NIPSCO's attorney fees] as Safway's insurer." *Appellee Safway's Br.* at 7. We generally refer to the arguments in this section as Safway's, although ACE may raise similar arguments.

case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)).

[24] The non-moving party, however, cannot "rest upon the mere allegations or denials of his pleading." T.R. 56(E). Likewise, "speculation is not enough to overcome summary judgment." *Cosme v. Clark*, 232 N.E.3d 1141, 1150 (Ind. 2024) (quoting *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 814 (Ind. 2021)). Instead, the party opposing summary judgment must, by affidavit or other evidence, "set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). "And '[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court.'" *Hughley*, 15 N.E.3d at 1003 (quoting *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909–10 (Ind. 2009)).

[25] The trial court entered findings and conclusions to support its summary judgment order, but they are not binding on this Court. *See Glob. Caravan Techs., Inc. v. Cincinnati Ins. Co.*, 135 N.E.3d 584, 588 (Ind. Ct. App. 2019), *trans. denied*. Rather, "we may affirm a grant of summary judgment upon any theory supported by the evidence." *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015).

[26] Safway's duty to defend arises in the indemnity provision of the Safway Agreement. "Indemnity agreements are contracts subject to the rules and

principles of contract construction." *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 756 (Ind. Ct. App. 2002). Indiana recognizes parties' freedom to enter contracts, and when construing a contract, courts presume the terms represent the parties' freely bargained agreement. *Hartman v. BigInch Fabricators & Constr. Holding Co., Inc.*, 161 N.E.3d 1218, 1221 (Ind. 2021). In interpreting a contract, the goal is to determine and give effect to the parties' intent. *Decker v. Star Fin. Grp., Inc.*, 204 N.E.3d 918, 920 (Ind. 2023). To do that, we start with the contract language. *Wohlt v. Wohlt*, 245 N.E.3d 611, 616 (Ind. 2024). We review the document as a whole and make every attempt to construe the contract language to avoid rendering any words, phrases, or terms ineffective or meaningless. *Thomas v. Valpo Motors, Inc.*, 258 N.E.3d 236, 241 (Ind. 2025). We will accept an interpretation of a contract that harmonizes all its provisions. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017). "If the contract's terms are unambiguous, then they are conclusive of the parties' intent, and courts give the contract its plain meaning." *Wohlt*, 245 N.E.3d at 616. A contract is not ambiguous simply because the parties disagree about the proper interpretation of its terms; for an ambiguity to exist, the agreement must be subject to more than one reasonable interpretation. *Id*.

[27] The interpretation of a contract is a question of law which we review *de novo*. *Id*. "Summary judgment is 'especially appropriate' in cases of contract interpretation 'because the construction of a written contract is a question of law.'" *Thomas*, 258 N.E.3d at 240 (quoting *N.H. Ins. Co. v. Ind. Auto Ins. Plan*, 176 N.E.3d 514, 521 (Ind. Ct. App. 2021), *trans. denied*).

## B. Contractual Indemnity and Defense

Before turning to the merits of this case, we summarize the procedural posture and what the trial court has—and has not—decided to date. In the underlying lawsuit, the Nagels alleged NIPSCO's negligence caused their injuries, and NIPSCO, by its defense, pointed to Safway as a contributing negligent actor. After Safway ceased defending NIPSCO in that lawsuit, NIPSCO filed this action seeking clarity on the parties' contract rights and obligations and alleging the defendants breached their contracts with NIPSCO and therefore owed NIPSCO defense and indemnification. Meanwhile, the underlying lawsuit ended in a settlement agreement with no determination of causation, negligence, or liability for the Nagels' injuries. Instead, the parties continued to vigorously litigate the indemnity claim—and the underlying issues of causation, negligence, and breach of contract related to the safety provisions—in this action. On summary judgment, the trial court determined Safway breached its duty to defend NIPSCO in the underlying suit, but stopped short of finding Safway was obligated to indemnify NIPSCO for its damages, losses, or liabilities incurred in the underlying suit because genuine issues of material fact remained regarding causation, negligence, and breach of contract. This case therefore calls on us to decide whether the trial court properly granted NIPSCO summary judgment on the issue of Safway's duty to defend when NIPSCO's indemnity claim is unresolved.

The cases the parties have presented to us as persuasive authority have decided issues of contractual defense and indemnity with divergent results. For

example, in *Exide Corp. v. Millwright Riggers, Inc.*, this Court held a contractor had no contractual duty to indemnify a factory owner for the factory owner's own negligence and therefore owed the factory owner no defense costs in a negligence claim brought by the contractor's employee against the factory owner. 727 N.E.2d 473, 481 (Ind. Ct. App. 2000), *trans. denied*. In *Ozinga Transportation Systems, Inc. v. Michigan Ash Sales, Inc.*, this Court held a utility company's subcontractor had control and possession over the area where the subcontractor's employee was injured, and therefore the subcontractor owed the company indemnification and defense costs in a negligence suit the plaintiff brought against the company but not the subcontractor. 676 N.E.2d 379, 386–88 (Ind. Ct. App. 1997), *trans. denied*. In *Henthorne v. Legacy Healthcare, Inc.*, this Court held a contractor had a duty to indemnify and defend a nursing home for liability incurred in a personal injury lawsuit to the extent the contractor's own negligence caused the injuries, but the damages for breach of the duty to defend could not be determined until fault had been apportioned. 764 N.E.2d at 760. Each of these cases turned on the specific contract language applied to the facts alleged in the complaint or developed in the underlying suit or indemnity action.

[30] Therefore, to determine whether a party has a contractual duty to defend in any given case, we first look to the contract language to ascertain the scope of the defense duty. *See Henthorne*, 764 N.E.2d at 759 (examining contract language to determine obligation to defend). We then examine the allegations in the complaint and determine whether they come within the scope of the defense

obligation. *See Davey Tree Expert Co. v. City of Indianapolis*, 147 N.E.3d 354, 356–57 (Ind. Ct. App. 2020) (applying undisputed contract language interpretation to the allegations in the complaint to determine whether the allegations fell within the indemnity and defense provision). We also may consider the factual underpinnings of the claims to determine whether the underlying complaint triggered an indemnitor's obligation to defend. *See Ozinga*, 676 N.E.2d at 388 (holding a utility company's subcontractor, Ozinga, had a contractual duty to defend and indemnify the company in a workplace injury suit alleging the company's negligence where the underlying facts showed the plaintiff's injury arose due to Ozinga's negligence, even though Ozinga was not named in the complaint).

## C. Contract Language

[31] The Safway Agreement indemnity and defense provision provides, in pertinent part:

> (a) To the fullest extent permitted by law, [Safway] . . . agrees to indemnify, defend and hold harmless [NIPSCO] from and against all claims, damages, losses, fines, penalties and expenses, including attorneys' fees, related in any way to (i) any breach of this Agreement by [Safway]; or (ii) [Safway's] or its Subcontractors' or agents' performance of the Work (collectively, "Claims"), provided that any such Claims in subsection (a)(ii) above are caused in whole or in part by any negligent act or omission of [Safway], any Subcontractor or any of its respective direct or indirect employees or agents for whose acts any of them may be liable. . . . The obligations of [Safway] under this Agreement shall not extend to the liability of [NIPSCO] arising out of [NIPSCO's] negligence.

*Appellant's App. Vol. 2* at 208.

[32] The contract language is not ambiguous. Safway promised to defend and indemnify NIPSCO—to the fullest extent permitted by law—against two types of claims: (1) claims "related in any way to" Safway's breach of the agreement, and (2) claims "related in any way to" Safway's work performance, if Safway's negligence caused in whole or in part the claims.

[33] The language "related to" is "quite broad." *Storch v. Provision Living, LLC*, 47 N.E.3d 1270, 1275 (Ind. Ct. App. 2015) (interpreting the phrase "arising out of or relating to" in a contract provision for attorney fees); *see also PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 100 (Ind. 1994) (describing the phrase "arising out of or relating to" in an arbitration contract as "all-encompassing"). Under the plain meaning of the word "relate," two things relate to one another "if they simply 'have relationship or connection.'" *Storch*, 47 N.E.3d at 1275 (quoting Merriam-Webster Online Dictionary). Black's Law Dictionary also defines "relate" as to "have reference to" or to "have some connection to[.]" *Relate*, Black's Law Dictionary (12th ed. 2024). In short, Safway broadly agreed to defend and indemnify NIPSCO against claims with *some connection to* Safway's breach of contract or Safway's work, if Safway's negligence caused the claim.

[34] We pause here to address one of Safway's arguments implicating the scope of its duty to defend NIPSCO. As a matter of contract interpretation, Safway contends Safway's defense obligations are limited to cases in which it would have to indemnify NIPSCO. In other words, unless Safway is required to

indemnify NIPSCO for certain damages and losses, its duty to defend is not triggered. Safway points to its promise to "indemnify, defend and hold harmless" NIPSCO against "all claims, damages, losses, fines, penalties and expenses, *including attorneys' fees*." *Appellant's App. Vol. 2* at 208 (emphasis added). Safway argues that "without a valid claim for indemnity, NIPSCO is not entitled to any relief related to its attorneys' fees" because the fee provision is tied to the indemnity claim. *Appellee Safway's Br.* at 27–28. And here, the trial court denied NIPSCO summary judgment on its indemnity claim because there were unresolved questions of material fact concerning whether Safway breached its safety obligations or negligently performed its work, thereby leading to NIPSCO's damages and losses in the underlying suit.

[35] "In general, an indemnity agreement involves a promise by one party (indemnitor) to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability." *Henthorne*, 764 N.E.2d at 756. Put differently, "indemnity is an obligation by one party to make another whole for a loss that the other party has incurred." 41 Am. Jur. 2d *Indemnity* § 1 (2025). The purpose of an indemnity provision "is to shift the financial responsibility to pay damages from the indemnitee to the indemnitor." *Ozinga*, 676 N.E.2d at 386. Indemnification obligations "generally accrue only on an event fixing liability rather than on preliminary events that eventually may lead to liability but have not yet occurred." 41 Am. Jur. 2d *Indemnity* § 23 (2025); *see also Henthorne*, 764 N.E.2d at 757 (observing "the duty to indemnify does not arise *until* the party seeking indemnity suffers loss or damages") (internal quotation omitted).

[36] But as this Court has held, the "duty to defend is a duty independent of the duty to indemnify against loss or liability." *Id.* at 756–57 (analyzing the contractual duty to defend separately from the duty to indemnify). Here, Safway agreed to defend NIPSCO against certain claims. "Defend" in the legal context generally means "to represent (someone) as an attorney" and "to act as legal counsel for someone who has been sued or prosecuted." *Defend*, Black's Law Dictionary (12th ed. 2024). As to an indemnity agreement, "defend" may also mean to "supply a legal defense for." *Id*. A "claim" is a "demand for money, property, or a legal remedy to which one asserts a right; [especially], the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, Black's Law Dictionary (12th ed. 2024). A claim is a "statement that something yet to be proved is true." *Id*. Therefore, the Safway Agreement's plain language implies a proactive responsibility to defend against claims when they are made. And this contractual duty is broader than Safway's duty to indemnify, which does not attach until NIPSCO realizes damages or losses from Safway's breach of contract or Safway's negligence.

[37] The indemnity provision also contains an exception: "The obligations of [Safway] under this Agreement shall not extend to the liability of [NIPSCO] arising out of [NIPSCO's] negligence." *Appellant's App. Vol. 2* at 208. The exception speaks in terms of liability: the "quality, state, or condition of being legally obligated or accountable" or "legal responsibility to another or to society, enforceable by civil remedy or criminal punishment[.]" *Liability*, Black's Law Dictionary (12th ed. 2024). The plain language here creates a

narrow exception, relieving Safway of its indemnity obligation only if liability—that is, legal responsibility—arising out of NIPSCO's negligence attaches.

## D. Underlying Lawsuit Claims

[38] We turn now to the allegations the Nagels brought against NIPSCO in the underlying lawsuit to determine whether they come within the contractual defense provision. The Nagels' claims plainly "related in any way to" Safway's contract obligations and performance of the work NIPSCO hired it to do. Nagel was a Safway employee and sought damages for injuries he sustained while constructing scaffolding NIPSCO hired Safway to build and retrieving parts from a rack within Safway's worksite. The Nagels' negligence claims repeatedly refer to Safway.[9] The complaint and the underlying factual scenario

---

[9] Specifically, the Nagels alleged NIPSCO was negligent in one or more of the following ways:

(a) Created an unreasonably dangerous condition with respect to the vehicles, equipment, or other instrumentalities that were allowed to be used or employed at or very near the scaffold being erected by Safway;

(b) Created an unreasonably dangerous condition when it knew or should have known that the use of vehicles, equipment or other instrumentalities at or near the scaffold being erected by Safway, created an unreasonable risk of harm to [Nagel] and others similarly situated;

(c) Failed to prevent vehicles, equipment or other instrumentalities from being used or employed at or near the scaffold being erected by Safway;

(d) Failed to properly warn [Nagel] and others similarly situated regarding the dangers and hazards posed by vehicles, equipment or other instrumentalities being used or employed at or near the scaffold being erected by Safway;

(e) Failed to properly warn [Nagel] and others similarly situated that vehicles, equipment or other instrumentalities would be used or employed at or near the scaffold being erected by Safway;

(f) Failed to establish a system for warning workers when vehicles, equipment or other instrumentalities would be used or employed in the areas in which they worked;

(g) Failed to adequately protect [Nagel] and others similarly situated from jobsite hazards, including but not limited to vehicles, equipment or other instrumentalities used or employed at or near the scaffold being erected by Safway;

of this case therefore triggered Safway's defense obligation under the plain language of the broad defense provision. And although Safway's assumption of NIPSCO's defense for seven years has no bearing on our interpretation of unambiguous contract language, it certainly speaks to the implications of the underlying suit. Safway's assumption of NIPSCO's defense in the underlying lawsuit effectively amounts to an admission Safway's contractual defense obligations covered the matter. *See Scottsdale Ins. Co. v. Harsco Corp.*, 199 N.E.3d 1210, 1219 (Ind. Ct. App. 2022) (observing an insurance company's assumption of a defense was "effectively an admission by [insurer] that it *was* obligated to defend [the insured] after that point"), *trans. denied*. If Safway had any doubt about its obligation to defend NIPSCO, it could have sought a declaratory judgment of its contractual rights and responsibilities in relation to the underlying suit. *See, e.g.*, *Davey Tree*, 147 N.E.3d at 356 (seeking declaratory judgment on whether one defendant had a contractual duty to defend co-defendant against complaint).

[39] Safway nevertheless argues it had no obligation to defend NIPSCO because NIPSCO faced claims only for its own negligence. Safway observes NIPSCO was the only defendant in the underlying lawsuit, and thus any damages or

---

(h) Failed to do what a reasonably prudent company would do under the same or similar circumstances; and/or

(i) Did what a reasonably prudent company would not do under the same or similar circumstances.

*Appellant's App. Vol. 5* at 36–37. The complaint also asserted NIPSCO was liable to the Nagels because of *res ipsa loquitur*, although that is no longer an issue.

losses assessed against NIPSCO would necessarily arise from NIPSCO's negligence. Because Safway did not agree to indemnify NIPSCO for its own negligence, Safway argues the exception relieved it of any obligation to indemnify and defend NIPSCO in the underlying suit.

[40] Safway likens this case to *Exide*. There, the contractor Brehob agreed to indemnify and defend factory owner Exide from "any and all liability, claims, actions, suits, losses, costs and expenses (including without limitation attorneys' fees), fines or penalties which may arise in any way, directly or indirectly, from Contractor, its employees, subcontractors, and their employees[.]" 727 N.E.2d at 479. Brehob's employee was injured in a fall while working in the factory and sued Exide for negligence. Exide in turn filed a third-party complaint against Brehob, claiming "Brehob was contractually obligated to indemnify Exide, pay its attorneys' fees, and provide Exide with insurance." *Id*. at 477.

[41] In interpreting the indemnity provision, the *Exide* Court held the contract did not explicitly put the contractor on notice that the contractor agreed to indemnify Exide for its own negligence. *Id*. at 481. And because Exide was "seeking indemnification from Brehob . . . for [Exide's] own negligence," the Court held Exide had no right to indemnification. *Id*. The Court then rejected Exide's argument Brehob was still contractually obligated to pay Exide's attorney fees incurred defending itself in the suit. The Court reasoned that because the contract's only provision for attorney fees appeared in the unenforceable indemnification clause, Exide had no contractual right to attorney fees.

[42] We agree with Safway that, like the contractor in *Exide*, it did not clearly or unequivocally promise to indemnify NIPSCO for NIPSCO's own negligence. In fact, it explicitly agreed to the opposite. But unlike *Exide*, NIPSCO does not seek to be indemnified for its own negligence. *See Appellant's Reply Br.* at 27 ("NIPSCO is not asking Safway to indemnify it for NIPSCO's negligence."). NIPSCO is seeking to be defended (and perhaps eventually indemnified) for claims related in some way to Safway's breach of contract or Safway's negligent performance, which the underlying lawsuit implicated. *See Ozinga*, 676 N.E.2d at 388 (observing indemnitee "does not seek to exculpate itself for its own negligence; rather, it seeks that [indemnitor] indemnify it for [indemnitor's] negligence").

[43] On that note, Safway complains that a "defendant sued for its own negligence cannot use its denials and defenses to change the plaintiff's claim and obtain indemnity from a third party that has no duty to indemnify the defendant from its own negligence." *Appellee Safway's Br.* at 25 (citing *Elcona Homes Corp. v. McMillan Bloedell, LTD*, 475 N.E.2d 713 (Ind. Ct. App. 1985), *trans. denied*). In *Elcona Homes*, the issue was whether Elcona was legally entitled to maintain a third-party action for indemnity in the absence of an express indemnity contract, which is not the case here.

[44] Where an express indemnity provision exists, this Court has looked beyond the parties named in the underlying complaint and considered the factual underpinnings and the allegations of a third-party complaint when determining whether the underlying complaint triggered an indemnitor's obligation to

defend. *See, e.g., Walsh Constr. Co. v. Zurick Amer. Ins. Co.*, 72 N.E.3d 957, 962 n.3 (Ind. Ct. App. 2017) (in plaintiff's negligence suit against contractor, observing contractor's third-party complaint seeking to "transfer any liability under [plaintiff's] original claim of negligence from [contractor] to [subcontractor]" by claiming subcontractor was negligent was sufficient to invoke subcontractor's duty to defend and indemnify contractor in the underlying suit); *Ozinga*, 676 N.E.2d at 388.

[45] Contrary to Safway's argument, these cases show NIPSCO was entitled to examine the underlying facts and point to Safway as a negligent actor when invoking the defense and indemnification clause. The present case perhaps does not follow the typical timeline of a third-party indemnity claim, as NIPSCO did not file a third-party complaint against Safway around the time the Nagels brought the underlying lawsuit (presumably because Safway had assumed NIPSCO's defense without reservation of rights). NIPSCO did, however, raise the affirmative defense of contributory fault and asserted damages were caused by Nagel, Safway, or unknown nonparties. *See Appellant's App. Vol. 5* at 79 ("The damages claimed by the plaintiff were caused in full or in part by a nonparty to this action as set forth in Ind. Code 34-51-2, *et. seq.* [Comparative Fault Act] . . ., whose name and identity is [Safway]."). And once Safway terminated its defense in 2016, and ACE and Safway rejected NIPSCO's re-tender of its request for indemnity and defense, NIPSCO promptly filed this suit seeking declaratory judgment of its rights under the Safway Agreement. In sum, the fact Safway was not named as a defendant in

the underlying lawsuit is not dispositive of whether the Nagels' claims triggered Safway's contractual duty to defend NIPSCO.

[46] Finally, Safway argues it had no obligation to defend NIPSCO after the *Nagel* opinion because NIPSCO was no longer facing claims even *implicating* Safway's negligence. According to ACE, Safway initially defended NIPSCO in the underlying lawsuit because the Nagels' complaint "arguably could be interpreted as alleging NIPSCO was vicariously liable for Safway's conduct." *Appellee ACE's Br*. at 31. Whatever Safway's original position might have been, Safway's view is that after the *Nagel* opinion, "things became dramatically different" because the only remaining issue on remand was NIPSCO's own negligence. *Id*. at 32. Safway especially points to the Court's holding that the Nagels' complaint "states no claim that NIPSCO is vicariously liable for the negligence of an independent contractor or any other third party, such as Safway" and "the complaint focuses solely upon NIPSCO's own alleged negligence in connection with the Bailly Generating Station worksite." *Nagel*, 26 N.E.3d at 43. Safway contends the *Nagel* opinion established Safway did not owe NIPSCO indemnification for the underlying lawsuit allegations as a matter of law, and if there is no duty to indemnify, there can be no duty to defend. *See Appellee Safway's Br*. at 27.

[47] Safway reads *Nagel* too broadly. The opinion addressed, in pertinent part, only the narrow issue of whether NIPSCO owed Nagel a duty of care as a matter of law. Before the *Nagel* opinion, the trial court granted NIPSCO summary judgment in the underlying lawsuit on the grounds NIPSCO did not owe Nagel

a duty of care, effectively ending the suit. The *Nagel* Court, however, held the underlying complaint encompassed a claim for premises liability. Under that theory, NIPSCO owed a common law duty to keep its property in a reasonably safe condition, which extended to employees of independent contractors. "To recover under a theory of premises liability sounding in negligence, the plaintiff must prove three elements: (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages." *Isgrig v. Trustees of Ind. Univ.*, 256 N.E.3d 1238, 1244 (Ind. 2025) (citation omitted). Whether a duty is owed in a premises liability case depends primarily on whether the defendant was in control of the premises when the accident occurred. *Id.* And that, the *Nagel* Court noted, may depend on resolution of the underlying facts by the trier of fact. *Nagel*, 26 N.E.3d at 44 (citing *McCraney v. Gibson*, 952 N.E.2d 284, 288 (Ind. Ct. App. 2011), *trans. denied*). In partially reviving the Nagels' claims and remanding the case, the *Nagel* Court held there was a genuine issue of material fact as to "whether *Safway* or NIPSCO was in control of the premises when and where [Nagel] was injured [which] must be resolved by a jury[.]" *Id.* at 46 (emphasis added). And in observing "Safway may have made the initial decision as to where [to] place the parts rack," the Court held there was an unresolved factual question about the obviousness of the danger of its placement. *Id.* at 45.

[48] Although Safway was not named as a defendant, the *Nagel* opinion establishes NIPSCO still faced a common law premises liability claim "related in any way to" Safway's work. The Court's summary of the Nagels' theory of the case is

replete with references to Safway. The opinion did not determine Safway's breach of contract or negligent performance was not a cause of the Nagels' injuries and claims against NIPSCO. The *Nagel* opinion did not relieve Safway of its duty to defend NIPSCO from the remanded claim under the plain language of the contract.

[49] NIPSCO's right to a defense was triggered, and Safway had a duty to defend NIPSCO through the resolution of the underlying claim. When Safway terminated its defense after the *Nagel* opinion, it breached its duty. The trial court did not err in granting NIPSCO summary judgment on this issue.

## 2. NIPSCO was not entitled to recover the settlement payment for Safway's breach of its duty to defend.

[50] After the trial court granted partial summary judgment for NIPSCO on Safway's breach of duty to defend, it held an evidentiary hearing on damages. It then ordered Safway to pay NIPSCO's defense costs incurred in the underlying lawsuit after Safway stopped paying for NIPSCO's defense, and NIPSCO's attorney fees in this action brought to enforce the Safway Agreement. It denied NIPSCO's request for the settlement payment.

[51] Where, as here, the trial court issues special findings of fact and conclusions thereon under Indiana Trial Rule 52, we apply a two-tiered standard of review. *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023). We first determine whether the evidence supports the findings and, if so, whether the findings support the judgment. *Id.* We do not reweigh the evidence or reassess witness

credibility, and we will not set aside the findings or judgment unless they are clearly erroneous. *Id*. at 234. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 658 (Ind. Ct. App. 2004). "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id*. As always, we review conclusions of law *de novo*. *Town of Linden*, 204 N.E.3d at 234.

[52] We first address the damages NIPSCO sought but the trial court did not award: the settlement payment NIPSCO made to the Nagels. NIPSCO contends two theories permit it to recover the settlement payment from Safway: (1) Safway should be collaterally estopped from denying liability for the underlying lawsuit settlement, and (2) NIPSCO is entitled to the settlement payment as a consequential damage for Safway breaching the duty to defend.

## A. Collateral Estoppel

[53] Collateral estoppel, also called issue preclusion, relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication by preventing inconsistent decisions. *Miller v. Patel*, 212 N.E.3d 639, 646 (Ind. 2023). Collateral estoppel "forecloses any 'subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit.'" *Id*. (quoting *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993)) (emphasis omitted); *see also Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 900 (Ind. Ct. App. 1992) (observing collateral

estoppel "involves a prior adjudication of a particular issue which is binding on the parties and their privies in a later lawsuit"), *trans. denied*. [10]

[54] On the other hand, where a prior adjudication does not determine an issue, the outcome will not collaterally estop subsequent litigation of that issue. *See Frankenmuth Mut. Ins. Co. v. Williams*, 645 N.E.2d 605, 608 (Ind. 1995) (holding an insurer that has notice and opportunity to control a lawsuit brought against its insured is "bound at least to the matters *necessarily determined* in the lawsuit") (emphasis added); *Kelly v. Hamilton*, 816 N.E.2d 1188, 1193 (Ind. Ct. App. 2004) (where insurance coverage was not at issue in the complaint nor decided by the entry of judgment in the underlying lawsuit, the insurer was not collaterally estopped from first raising the issue of coverage in proceedings supplemental); *Metzler*, 586 N.E.2d at 902 (holding an insurer was not estopped from defending against coverage on the grounds its insured was not a "named insured" because the prior litigation did not address the policy language, even though the insurer *was* estopped from litigating whether the insured acted negligently or intentionally because negligence *had* been adjudicated in the prior suit); *State Farm Mut. Auto. Ins. Co. v. Glasgow*, 478 N.E.2d 918, 925 (Ind. Ct.

---

[10] In the insurance context, an insurer is typically bound by the result of litigation to which its insured is a party, as long as the insurer had notice and the opportunity to control the proceedings. *Id.* If an insurer makes an independent determination it has no duty to defend, it must protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or defend its insured under a reservation of rights. *Id.* at 902. Otherwise, it may be collaterally estopped from challenging facts or issues decided in the underlying litigation against its insured. *Id.* In *Metzler*, this Court held an insurer was collaterally estopped from litigating whether its insured's conduct was negligent or intentional because the trial court determined in a prior lawsuit that the insured acted negligently. *Id.*

App. 1985) (trial court's judgment in prior action which did not include an explicit finding that the insured was negligent did not collaterally estop an insurer from litigating in a subsequent action whether the insured acted negligently or intentionally).

[55] NIPSCO's estoppel claim primarily relies on this Court's opinion in *Roadsafe Holdings, Inc. v. Walsh Construction Co.*, a factually similar case. 164 N.E.3d 726 (Ind. Ct. App. 2021). There, a subcontractor, Roadsafe, had a contractual duty to indemnify a prime contractor, Walsh, "against all claims, damages, losses, or injuries arising out of [Roadsafe's] negligent acts or omissions and shall save [Walsh] harmless from any and all liability which might be asserted against [Walsh] in connection therewith." *Id*. at 731. In a negligence suit brought against Walsh and implicating Roadsafe's work, Walsh settled for $60,000 without a liability determination. When Walsh pursued Roadsafe for the settlement payment and its attorney fees and costs, Roadsafe argued it had no contractual duty to indemnify Walsh without an adjudication that Roadsafe was negligent in causing the driver's injuries. On appeal, this Court held Roadsafe was collaterally estopped from asserting it had no duty to indemnify Walsh for the settlement payment, even though there was no prior judicial determination Roadsafe was negligent. *See id*. at 732 n.3 (noting "it is undisputed that the settlement agreement did not identify a negligent party").

[56] At first blush, *Roadsafe* appears to support NIPSCO's argument that Safway, having breached its duty to defend, should be collaterally estopped from asserting it has no obligation to indemnify NIPSCO for the settlement payment.

The Court seemingly treated Roadsafe's concession that it breached its duty to defend Walsh as conclusive of Roadsafe's indemnity obligations. Yet it also appears from the opinion Roadsafe failed to carry its burden to set forth specific facts to show there was a genuine issue for trial on Walsh's negligence or persuade this Court on appeal that the trial court improperly granted summary judgment. *See id.* at 732 ("Roadsafe then suggests, *without citing any designated evidence*, that Walsh was negligent and that Roadsafe has no duty to indemnify Walsh for its own negligence.") (emphasis added). In other words, while Roadsafe conceded it breached its duty to defend, there also was no genuine dispute about whether Walsh's damages and losses arose out of Roadsafe's negligence.

[57]   We cannot say the same here. Whether NIPSCO was negligent remained undecided in the underlying suit, as the case never went to trial and NIPSCO denied any liability when executing the settlement with the Nagels. *See Appellant's App. Vol. 10* at 70 (settlement agreement stating "the payment made hereunder is made as a compromise of disputed claims and shall not be taken as an admission of liability on the part of [NIPSCO], by whom liability is expressly denied"). Moreover, the issue of negligence and Safway's indemnity obligations have been vigorously contested in this case, which was filed before the NIPSCO-Nagel settlement. And here, the parties designated evidence showing there were genuine issues of material fact precluding the trial court from granting NIPSCO summary judgment on its claims for indemnity and breach of the safety-related contract provisions. Because the issue of negligence

was not conclusively decided in the underlying suit, NIPSCO cannot recover the settlement payment under a collateral estoppel theory, which precludes litigation only of facts or issues necessarily adjudicated in a former suit. *See Miller*, 212 N.E.3d at 646.

[58] NIPSCO also relies on *Tom Raper Inc. v. Safari Motor Coaches, Inc.*, 2001 WL 13299 (S.D. Ind. Jan. 4, 2001), *amended by* 2001 WL 826857 (S.D. Ind. July 23, 2001). There, in litigation concerning the sale of a recreational vehicle, indemnitor Safari ceased defending indemnitee Raper after two years. But unlike here, Safari agreed to defend and indemnify Raper for Raper's own negligence in an oral indemnity and defense contract made *after* the underlying lawsuit was filed. So when Safari abandoned the defense and Raper incurred attorney fees defending the action and suffered an adverse judgment, there was no question Safari breached the contract, and the damages fell within the scope of the indemnity agreement.

[59] As an alternate basis of recovery, the *Raper* Court discussed the doctrine of equitable insurer estoppel.[11] Although Safari was not Raper's insurer, the

_____

[11] Generally, the doctrine of equitable estoppel cannot be used to create or extend the scope of coverage under an insurance contract. *Emps. Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind. Ct. App. 1999), *trans. denied*. But under one of two recognized exceptions, "an insurer may be estopped from raising the defense of noncoverage when it assumes the defense of an action on behalf of its insured without a reservation of rights but with knowledge of facts which would have permitted it to deny coverage." *Id*. The exception "is predicated upon the insurer's conflict of interest, that is, at the same time the insurer defends the insured, it may also be formulating policy defenses to deny coverage." *Id*. "It is also justified by the fact that the insured is deprived of his right to control his defense." *Id*. In *Raper*, Safari's control of the defense was critical to the district court's decision because it demonstrated Raper suffered prejudice as a matter of law. Here, although it is clear from the record Safway footed the bill for the NIPSCO defense until just

district court applied insurer estoppel on the grounds "the positioning of the parties here is substantially similar to such a case: Safari contracted to provide Raper the defense of and [to] indemnify for the claims in the [underlying] litigation, thus insuring Raper against any loss stemming from that litigation." *Id*. at *7 n.9. But Safway is not NIPSCO's insurer and did not agree after the fact to indemnify NIPSCO for *any* loss stemming from the Nagel lawsuit. Safway has no contractual obligation to indemnify NIPSCO for NIPSCO's own negligence. Because the Safway Agreement differs substantially from the contract in *Raper* regarding indemnity, we decline to extend the doctrine of equitable insurer estoppel to this case.

[60] The trial court did not err in denying NIPSCO the settlement payment under an estoppel theory.

## B. Consequential Damages

[61] NIPSCO next argues it is entitled to the settlement payment as a consequential damage flowing from Safway's breach of its duty to defend. A party injured by a breach of contract may recover the benefit of its bargain. *Berkel & Co.*, 814 N.E.2d at 658. "Consequential damages may be awarded on a breach of

---

before the 2016 mediation, there is some conflicting argument in the appellate briefs about which party controlled the litigation strategy. *Compare Appellee ACE's Br.* at 32 ("NIPSCO conducted its own defense at all times – that defense was not managed by anyone other than NIPSCO – Safway was just a payor.") *with Appellant's Br.* at 33 (claiming NIPSCO suffered prejudice because Safway "withdrew its defense one business day before mediation, just months before trial" so that NIPSCO "suddenly faced a badly injured plaintiff, unpredictable jury, and potentially large judgment, with no cooperating indemnitor"). Even if Safway were NIPSCO's insurer, we would not apply insurer estoppel on this record.

contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999). This rule generally limits consequential damages to reasonably foreseeable economic losses. *Id.* The test for measuring damages is objective: we measure based on foreseeability at the time the parties entered the contract, not the facts existing and known to the parties at the time of the breach. *Berkel*, 814 N.E.2d at 658–59.

[62] The question, then, is whether at the time NIPSCO and Safway entered the Safway Agreement, a settlement payment made by NIPSCO in a negligence case was a reasonably foreseeable economic loss if Safway breached its duty to defend but had not yet been found to have an obligation to indemnify NIPSCO.

[63] In support of its position that the settlement was foreseeable, NIPSCO relies on *McGrath v. Everest Nat. Ins. Co.*, 668 F.Supp.2d 1085 (N.D. Ind. 2009), a federal district court case applying Indiana law. There, in a state court personal injury case brought against the insured, the insurer retained counsel who failed to file an answer. This led to a state court default judgment on liability in the injured plaintiff's favor and subsequent damages settlement. That settlement was entered as the final judgment of the state trial court. The plaintiff then pursued recovery of the settlement from the insurer in a federal lawsuit. The plaintiff alleged the insurer breached its contractual duty to defend the insured and was thus bound by the state court judgment. The district court agreed. As to

damages for the breach, the *McGrath* Court relied on well-settled insurance law principles:

> The foreseeability for the insurer in a case such as this is straightforward and uniformly supported by courts nationwide: "if an insurer, either through inaction or affirmative representations, leads an insured to believe that it will provide a defense, but fails to do so, the insurer may be liable for any default judgment that is entered against the insured, even if it is in excess of the policy limits."

*Id.* at 1107 (quoting Windt, 1 Insurance Claims and Disputes 4th § 4:36). Therefore, the "consequential damages for the breach of contract claim, which the insureds mitigated [by entering into the settlement] equal the final judgment entered in the state court claim." *Id.* at 1109.

[64] In *McGrath*, the default judgment functioned as a judgment on the merits of liability, and having breached its duty to defend, the insurer was bound by the results of the underlying litigation. *See id.* at 1115, 1119. But here, there has been no judgment in the underlying lawsuit conclusive as to liability for the Nagels' negligence claims against NIPSCO. NIPSCO's decision to settle, while perhaps prudent, did not resolve the Nagels' claims in such a way to determine Safway's indemnity obligations under the Safway Agreement. Here, NIPSCO seeks indemnity for a loss by categorizing it as consequential damages. But to award NIPSCO the settlement payment under these circumstances would be an end-run around the trial court's summary judgment ruling that there are genuine issues of material fact on the issue of indemnity.

[65] Still, NIPSCO argues Safway's "safety breaches are beyond doubt," and thus it was always foreseeable that Safway would have some financial responsibility in this case. *Appellant's Br.* at 45. NIPSCO argues "regardless of how Mr. Nagel was injured, any damages NIPSCO would have to pay in a judgment would be because of Safway's conduct and failure to honor its contractual promises to keep its worksite and workers safe." *Id.* at 43. But again, the trial court found genuine issues of material fact precluded the entry of summary judgment on the issue of safety breaches. This issue is neither resolved nor before us at this time.

[66] We are not persuaded the settlement payment was a natural, foreseeable, and consequential damage for the breach of the duty to defend when NIPSCO and Safway entered this contract. At this stage of the litigation, the trial court did not err in denying NIPSCO's request to recover the settlement payment.

## 3. The trial court did not clearly err in holding Safway responsible for the underlying lawsuit defense costs, subject to an offset for Headwaters' contribution.

[67] We turn now to the damages the trial court awarded NIPSCO.[12] After concluding Safway breached its duty to defend NIPSCO as a matter of law, the trial court awarded NIPSCO the defense costs it incurred in the underlying

---

[12] As to the underlying lawsuit defense costs, in the "Order" section of the damages order, the trial court calculated those costs as $1,348,097.75, consisting of $913,594.26 in legal fees and $434,503.49 in prejudgment interest through October 31, 2023. *Appellant's App. Vol. 2* at 136. But in the factual findings of the damages order, the prejudgment interest is listed as $513,798.47, leading to a total of $1,427,392.73. *Id.* at 113. We remand this case for clarification on the damages calculation.

lawsuit after Safway terminated its defense and until NIPSCO settled with the Nagels. The trial court found NIPSCO's defense costs "are presumed reasonable" and were "readily ascertainable" and awarded NIPSCO prejudgment interest on those costs. *Appellant's App. Vol. 2* at 95.

[68] "Generally, the computation of damages is a matter within the sound discretion of the trial court." *Berkel*, 814 N.E.2d at 658. The damages for the breach of the duty to defend are the reasonable and necessary expenses incurred defending against the action. *See Recticel Foam*, 716 N.E.2d at 1027 ("Because Wausau has a duty to defend Recticel, Wausau is liable for the reasonable and necessary expenses incurred by Recticel in defending the actions."); *see also Zebrowski & Assocs., Inc. v. City of Indianapolis*, 457 N.E.2d 259, 264 (Ind. Ct. App. 1983) ("An indemnitee, who incurs legal expenses through defending an action against him for which he is entitled to indemnification, is entitled to recover the expense of creating his defense, including reasonable attorney fees.").

[69] Safway does not contest the trial court's award of NIPSCO's defense costs incurred directly in defending the Nagels' claims, the reasonableness of those costs, or the award of prejudgment interest. But Safway does contest the apportionment of those costs between Safway and Headwaters.

[70] In the damages order, the trial court found Safway and Headwaters jointly and severally liable for the cost of NIPSCO's defense in the underlying lawsuit because Safway and Headwaters each breached their contractual duties to

defend NIPSCO. Safway contends the plain language of the Safway Agreement provides that any indemnification and defense should be shared pro rata—that is, proportionally—between Safway and Headwaters. Safway points to the indemnification provision language that Safway only agreed to indemnify and defend NIPSCO for Safway's own contract breach or negligent performance (not others') and that "[s]uch obligation shall not negate, abridge, or otherwise reduce any other right or obligation of indemnity or contribution in favor of [NIPSCO]." *Appellant's App. Vol. 2* at 208. Safway contends this language demonstrates "precise and clear terms indicating Safway's and NIPSCO's intent that any indemnification and defense be shared pro rata," and is akin to insurance policy language requiring pro rata allocation among insurers. *Appellee Safway's Br.* at 55. Safway asks this Court to remand the case for pro rata allocation.

[71] Insurance contracts at times contain "other insurance" provisions addressing how a policy should be applied when more than one policy covers an insured. *See United Farm Bureau Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 678 N.E.2d 1165, 1167 (Ind. Ct. App. 1997), *trans. denied*. A pro rata clause is a type of "other insurance" provision that "apportions liability among concurrent insurers." *Cincinnati Ins. Co. v. Amer. Alt. Ins. Corp.*, 866 N.E.2d 326, 329 (Ind. Ct. App. 2007), *trans. denied*. In this context, "before pro rata contribution may be required between insurers providing concurrent coverage, the policies must cover (1) the same parties, (2) in the same interest, (3) in the same property, (4) against the same casualty." *Ind. Ins. Co. v. Sentry Ins. Co.*, 437 N.E.2d 1381,

1388 (Ind. Ct. App. 1982) (holding two insurers whose policies both included pro rata clauses and insured a home seller against loss of the house to fire were entitled to pro rata contribution when fire destroyed the house).

[72] In reviewing the Safway Agreement, we see no language conveying an intent to apportion liability or defense costs for concurrent breach among contractual indemnitors. Rather, the indemnity provision indicates Safway's obligation to defend and indemnify NIPSCO is unaffected by "any other right or obligation of indemnity or contribution in favor of" NIPSCO. *Appellant's App. Vol. 2* at 208. As we see it, Safway agreed to defend and indemnify NIPSCO against certain claims related to Safway's conduct. In a suit implicating that conduct, Safway breached its defense duty, which caused NIPSCO to incur defense costs it would not otherwise have incurred. That said, NIPSCO concedes it "cannot obtain a double recovery" and Safway is entitled to an offset for any costs it recovers (or has now recovered) from Headwaters as part of the settlement reached during the pendency of this appeal. *Appellant's Reply Br*. at 50. We agree and accordingly find no clear error in the trial court's order.[13]

---

[13] NIPSCO contends *Thomson Inc. v. Insurance Company of North America* holds that damages for breach of the duty to defend are joint and several as a matter of law. 11 N.E.3d 982 (Ind. Ct. App. 2014), *trans. denied*. An insurance coverage case, *Thomson* arose out of an underlying class action toxic tort lawsuit that triggered multiple insurance policies issued by different insurers. As to the duty to defend, the trial court ordered the three primary insurers to defend the insured in the class action. *Id*. at 1023. At some stage of the litigation, the trial court "rejected [insurer] XL's claim that it is entitled to a pro rata allocation on the duty to defend." *Id*. at 1017. As to indemnity, the trial court similarly rejected XL's request for a proportional allocation method, which was based on the same policy language as the defense duty. *Id*. On appeal, however, the *Thomson* Court concluded pro rata apportionment on liability *was* appropriate based on policy language limiting coverage to "those sums" the insured becomes legally obligated to pay for bodily injury that occurred

## 4.  NIPSCO's attorney fees in this action are not defense costs but the trial court did not clearly err in awarding them under the fee-shifting provision of the Safway Agreement.

[73]  Safway next appeals the trial court's order awarding NIPSCO attorney fees incurred in bringing this action.[14]  The trial court awarded the fees under two theories: "as costs associated with prosecuting its claim for defense damages under Indiana case law," that is, defense costs, and under the fee-shifting provision of the Safway Agreement.  *Appellant's App. Vol. 2* at 130–31.

### A.  Indemnification Action Attorney Fees as Defense Costs

[74]  Generally, Indiana follows the American Rule, which requires each party to a lawsuit to pay its own attorney fees.  *Stewart v. TT Com. One, LLC*, 911 N.E.2d 51, 58 (Ind. Ct. App. 2009), *trans. denied*.  But the trial court here determined NIPSCO's attorney fees in this action were recoverable as defense costs resulting from Safway's breach of its duty to defend NIPSCO in the underlying suit.  *See Appellant's App. Vol. 2* at 130 (agreeing with NIPSCO that because

---

"during the policy period." *Id*. at 1019, 1021.  By the time of the appeal, two of the three primary insurers had settled regarding the duty to defend, leaving only XL on the hook for certain defense costs.  This Court affirmed the reasonableness and necessity of defense costs as to XL, but without discussion of pro rata apportionment or joint and several liability for defense costs.  We are not convinced *Thomson* holds that defense costs are, as a matter of law, shared jointly and severally between two parties who have separate contractual duties to defend the same indemnitee.  But we need not decide that issue here, where Headwaters has since settled with NIPSCO and NIPSCO concedes Safway is entitled to an offset for Headwaters' contribution.

[14] The trial court's order also contains discrepancies in the amount of this award.  For the costs of this action, the trial court ordered Safway to pay legal fees of $739,728.93, and prejudgment interest through October 31, 2023, of $175,138.06, for a total of $914,866.99.  *Appellant's App. Vol. 2* at 136–37.  But in the findings of fact, the trial court listed $847,021.31 in legal fees, plus prejudgment interest through October 31, 2023, of $246,132.14, for a total award of $1,120,153.45.  *Id*. at 114.  We remand for clarification.

Safway breached its duty to defend NIPSCO in the underlying suit, "NIPSCO was forced to sue [Safway] to avoid or limit its liability").

[75] The trial court found NIPSCO's attorney fees were recoverable based on the following statement in *Bethlehem Steel Corp. v. Sercon Corp.*: "An indemnitee is entitled to recover attorney's fees expended defending the underlying claim *and prosecuting the claim for indemnification*." 654 N.E.2d 1163, 1168 (Ind. Ct. App. 1995) (emphasis added), *trans. denied*. The *Bethlehem Steel* Court cited *Zebrowski*, 457 N.E.2d at 264, for that statement of law, which in turn relied on the federal district court case of *Price v. Amoco Oil Co.*, 524 F.Supp. 364 (S.D. Ind. 1981). In neither *Bethlehem Steel* nor *Zebrowski* did the trial court order—or the appellate court affirm—an award of attorney fees for prosecuting an indemnification claim as a defense cost.[15] And in *Price*, the indemnity clause of the contract stated the indemnitee could recover "reasonable expenses and attorneys' fees incurred by [indemnitee], in the event that [indemnitor] shall default under the provisions of this paragraph." 524 F.Supp. at 372. The contract in *Price* therefore explicitly provided for attorney fee shifting; it did not allow the indemnitee to recover attorney fees for prosecuting the indemnity agreement as

---

[15] In *Bethlehem Steel*, the trial court denied the indemnitee the opportunity to present evidence of attorney fees, and this Court remanded for a hearing on the issue. 654 N.E.2d at 1168, 1170. Whether the attorney fees sought were for the underlying suit or the indemnification action is unclear from the opinion. In *Zebrowski*, "only recovery of [attorney] fees concerning the original suit was requested" and awarded. 457 N.E.2d at 264.

a defense cost. These authorities do not support NIPSCO's claim for attorney fees in this case.

[76] Safway points our attention to *Dale Bland Trucking, Inc. v. Kiger*, 598 N.E.2d 1103 (Ind. Ct. App. 1992), *trans. denied*. There, this Court declined to apply the dicta in *Zebrowski* to an indemnitee's request for attorney fees incurred in prosecuting a declaratory indemnification action. *Id*. at 1105. The Court expressly rejected the indemnitee's characterization of the attorney fees as consequential damages, because "Indiana precedent following the American Rule for attorney's fees precluded the award." *Id*.; *see also BioConvergence, LLC v. Menefee*, 103 N.E.3d 1141, 1170–71 (Ind. Ct. App. 2018) (also declining to adopt *Zebrowski*'s reasoning and instead relying on *Dale Bland Trucking* in declining to award attorney fees to indemnitee seeking to enforce an indemnification provision that did not explicitly provide for attorney fees), *trans. denied*. We believe this is an accurate application of Indiana law, which adheres to the American Rule barring attorney fee-shifting unless a statute, contract, or equitable exception permits it. *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 816 (Ind. 2012) ("Thus, in the absence of statutory authority or an agreement between the parties to the contrary—or an equitable exception—a prevailing party has no right to recover attorney fees from the opposition.") (footnote on equitable exceptions omitted).

[77] Still, NIPSCO urges us to adopt the reasoning in *Thomson, Inc. v. Insurance Company of North America*, that all means of limiting liability, including actions for contribution and indemnification, are compensable defense costs. 11

N.E.3d at 1026 n.26. Again, we must look beyond the language in *Thomson*'s footnote, which relied on an Illinois federal district court case, *Great West Casualty Co. v. Marathon Oil Co.*, 315 F.Supp.2d 879, 882 (N.D. Ill. 2003), which in turn relied on a New York Supreme Court case *Perchinsky v. State*, 660 N.Y.S.2d 177 (N.Y. App. Div. 1997). When we trace the origin, we see the New York court allowed an indemnitee to recover "'defensive' third-party claims *against parties other than the contractual indemnitor*." *Id*. at 181. The parties and the court in that case explicitly agreed the indemnitee "could *not* recover for the expense of pursuing its cross claim against [the indemnitor] to enforce its contractual right of indemnification." *Id*. (emphasis added). We do not read the footnote in *Thomson* as authorizing the recovery of NIPSCO's attorney fees in this action as defense costs, and we decline NIPSCO's invitation to expand the law to permit recovery of attorney fees absent a statute, contract, or equitable exception providing otherwise.

### B. Fee-Shifting Provision

[78] That said, the Safway Agreement contains a fee-shifting provision. As an exception to the American Rule, parties may shift the obligation to pay attorney fees through contract, and courts will enforce the agreements so long as they are not contrary to law or public policy. *Stewart*, 911 N.E.2d at 58. The purpose of a fee-shifting provision is to make the prevailing party to a contract whole if litigation is necessary to vindicate the party's rights. *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 825 (Ind. Ct. App. 2005). Generally,

"fee-shifting provisions will be upheld if enforcement does not contravene this policy." *Id.*

[79] The Safway Agreement fee-shifting clause states:

> If [Safway] breaches any term of this Agreement . . . [Safway] shall be in default of this Agreement. Upon [Safway's] default, [NIPSCO], without limiting or waiving any other rights which [NIPSCO] may have at law or equity, may immediately do any or all of the following: . . . (c) seek from [Safway] monetary damages in excess of any unpaid Contract Sum for the Work performed to compensate [NIPSCO] for damages it sustained from [Safway's] default, including, without limitation, compensation for . . . attorneys' fees[.] [NIPSCO] shall be entitled to collect its reasonable attorneys' fees and costs, including expert and consulting fees, incurred in enforcing any term of this Agreement, including, without limitation, participation in any settlement discussions, alternative dispute resolution processes, or litigation.

*Appellant's App. Vol. 2* at 212.

[80] After Safway ceased defending NIPSCO, NIPSCO brought this action to enforce Safway's contractual duty to defend and recover damages attributable to Safway's breach. Under a straightforward application of the contract language, NIPSCO was entitled to collect from Safway the "reasonable attorneys' fees and costs" incurred in litigating this suit to enforce the terms of the Safway Agreement. *Id.*

[81] Safway does not dispute the meaning of the fee-shifting contract provision; rather, Safway argues recovery of costs in this case would be "premature."

*Appellee Safway's Br.* at 49. Safway contends the fee-shifting provision only allows NIPSCO to recover its attorney fees and costs incurred in enforcing the Safway Agreement against Safway and notes NIPSCO was simultaneously litigating claims here against Headwaters, Whitcomb, ACE, and Acuity, which remained unresolved at the time of the damages hearing. *Id.* Safway also argues NIPSCO should only be permitted to recover those attorney fees attributable to NIPSCO's duty to defend argument, rather than the alternate theories of recovery NIPSCO pursued in the instant litigation. Safway essentially argues the attorney fees and costs the trial court awarded are unreasonable because they should be parsed and awarded after all indemnity claims against all parties are resolved.

[82] At the damages hearing, NIPSCO presented documentary evidence supporting the hours worked and the rates claimed for this action. NIPSCO's expert witness, attorney Thomas O'Gara, testified to the reasonableness of the fees charged based on the time, labor, novelty, difficulty, and skill required for the instant litigation. In O'Gara's opinion, "all of the fees that NIPSCO has incurred in the instant action related to the breach of the duty to defend." *Tr. Vol. 2* at 128–29. O'Gara stated he would not further break down the fees based on issue and party because there was "tremendous overlap . . . in the litigation" and it is "very difficult when there are interrelated issues to parse the dollars spent on a . . . motion for summary judgment" in multi-party litigation, particularly where, as here, the parties join each other's motions and are aligned on certain issues. *Id.* at 141–42.

[83]     On this evidence, the trial court found the "vast majority" of NIPSCO's attorney fees and costs in this action were related to pursuing damages stemming from Safway's decision to cease defending NIPSCO in the underlying suit. *Appellant's App. Vol. 2* at 129. Further, "[i]t was Safway's decision not to defend that caused NIPSCO to incur these costs." *Id*. The trial court also found NIPSCO's duty to defend argument and alternative arguments for recovery "were almost always argued together in this action." *Id*. The trial court found O'Gara's testimony "persuasive" that "it was appropriate for NIPSCO to package its costs expended in pursuit of this litigation without separately assigning costs to specific defendants or claims given the amount of overlap between them in the motions practice in this case." *Id*. at 132. The trial court observed "Safway and Headwaters did not present comparably persuasive evidence that NIPSCO's billing practices led to an unreasonable attorney's fees calculation." *Id*. at 133. For this reason, the trial court declined to award NIPSCO only a portion of its fees because "that would not be reasonable given the circumstances of this case." *Id*. at 129.

[84]     The evidence supports the trial court's finding that the attorney fees NIPSCO requested were incurred to enforce Safway's duty to defend NIPSCO in the underlying lawsuit. The evidence also supports the trial court's finding that it would be unreasonable to parse these attorney fees and costs because of the significant overlap in issues and parties. As a result, the findings support the trial court's judgment awarding NIPSCO its requested attorney fees and costs under the fee-shifting provision, which allows recovery of reasonable attorney

fees and costs incurred to enforce the Safway Agreement terms. The trial court did not clearly err.

## 5. The ACE-Safway Policy does not cover NIPSCO's attorney fees in this action.

[85] Finally, we turn to the discrete issue raised by ACE: whether the damages the trial court ordered Safway to pay are covered under the ACE-Safway Policy.[16] To answer this question, we interpret the ACE-Safway Policy.

> The usual principles of policy construction apply here. Contracts for insurance are subject to the same rules of interpretation as are other contracts. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence, and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous. Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage. Interpretation of the contract should harmonize its provisions, rather than place the provisions in conflict. Terms are to be given their ordinary and generally accepted meaning.

*Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246–47 (Ind. 2005) (internal citations and quotation marks omitted).

---

[16] The trial court denied summary judgment on all claims between all parties, except NIPSCO's allegation that Safway and Headwaters breached their contractual duties to defend. We agree with NIPSCO that the issues of whether ACE breached any duty owed directly to NIPSCO or covered NIPSCO's damages or losses as an additional insured under the ACE-Safway Policy is not before this Court. The only question is whether Safway's liability for breaching its duty to defend NIPSCO is covered under the ACE-Safway Policy.

The ACE-Safway Policy provided ACE would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." *Appellant's App. Vol. 3* at 11.  Based on this language, the trial court reasoned the underlying lawsuit defense costs and attorney fees in this action "ultimately arise from claims for bodily damage brought by Nagel." *Appellant's App. Vol. 2* at 136.  After calculating the damages, the trial court summarily ordered: "ACE is liable to pay these sums under its policies, subject to any applicable deductibles and self-insured retentions." *Id*. at 137.  We examine each type of damages in turn.

## A.  Underlying Lawsuit Defense Costs

In response to NIPSCO's motion for damages in the trial court, ACE raised no policy defenses concerning the defense costs in the *Nagel* action.  ACE argued only that "any obligations of ACE to pay defense fees for which its insureds are held liable to pay should . . . be deferred until liability for the harms suffered by Nagel is established." *Appellant's App. Vol. 14* at 66.  In the damages order, the trial court found there "does not appear to be any disagreement among the parties that NIPSCO's Underlying Lawsuit defense costs are covered by the policies." *Appellant's App. Vol. 2* at 135.  On appeal, ACE joins Safway's argument that Safway had no duty to defend NIPSCO after the *Nagel* opinion.  Assuming we hold otherwise, as we have, ACE makes no argument on appeal that the ACE-Safway Policy does not cover its insured's costs to defend a bodily injury suit implicating the insured's conduct, subject to the applicable

deductible.[17]  We agree, then, with the trial court's assessment that there appears to be no controversy on this point, and that ACE is liable to pay these costs under the policy.

## B.  Instant Action Attorney Fees

[88]  But as to NIPSCO's attorney fees in this case, ACE disclaimed any coverage under the ACE-Safway Policy for costs Safway agreed to pay under the fee-shifting provision of the Safway Agreement if NIPSCO sued Safway to enforce their contract.  On appeal, ACE renews this argument and contends the trial court created "a fee-shifting framework out of whole cloth, which has no basis under the text of the policies or existing Indiana law."  *Appellee ACE's Br.* at 41.

[89]  The ACE-Safway Policy broadly covers damages "because of 'bodily injury'."  *Appellant's App. Vol. 3* at 11.  The policy also provides coverage for damages because of "bodily injury" under an "insured contract," which means, in relevant part:

---

[17] As explained above, under a high-deductible endorsement, Safway agreed Safway's claim service organization would provide for the defense of all claims or suits arising under the policy, ACE "shall not have any duty to defend any such 'suit,'" and ACE would have no duty to pay any defense cost (or "allocated cost adjustment expenses") within the deductible amount. *Appellant's App. Vol. 3* at 41.  For the first time on appeal, ACE raises new arguments about the additional insured endorsements in the ACE-Safway Policy and the relationship between the policy's coverage limits and the amount of commercial general liability coverage NIPSCO contractually required Safway to procure.  These issues were not briefed to the trial court as part of NIPSCO's motion for damages and are irrelevant to the discrete issue of whether the damages assessed against Safway are generally covered by the ACE-Safway Policy, particularly since the trial court noted the damages award was "subject to any applicable deductibles and self-insured retentions." *Appellant's App. Vol. 2* at 137.  To the extent ACE and NIPSCO seek to litigate the applicable deductible amounts, whether those have been reached, excess insurance coverage, and NIPSCO's coverage as an additional insured, those arguments are better made first to the trial court to allow development of the record.

That part of any other contract or agreement pertaining to [Safway's] business (including an indemnification of a municipality in connection with work performed for a municipality) under which [Safway] assume[s] the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Id.* at 22. In this context, "damages because of 'bodily injury'" include attorney fees and litigation expenses:

Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.* at 12.

[90] NIPSCO's chief argument on appeal is that "damages because of 'bodily injury'" in an insured contract includes its attorney fees in this case, not just the underlying tort action. NIPSCO contends the phrase "because of" "connotes a

non-exacting causation requirement whereby any award of damages that flows from covered damage is covered, unless otherwise excluded." *Appellant's Reply Br.* at 55.[18] NIPSCO again essentially argues its attorney fees in this case are damages "because of" the underlying tort action.

[91] We disagree for the same reasons we reject NIPSCO's argument the attorney fees in this case are "defense costs" related to the underlying lawsuit. *See* Section 4.A. *supra*. The "insured contract" provisions in the ACE-Safway Policy concern coverage for attorney fees and litigation expenses incurred for the defense of a party in a suit for tort liability, not to vindicate a party's contractual rights. As explained above, the attorney fees NIPSCO has incurred in bringing this indemnification action are not defense costs "because of" the underlying lawsuit. NIPSCO can recover from Safway its attorney fees in this case only because the Safway Agreement explicitly permits attorney fee shifting to enforce the agreement against a breaching party. NIPSCO points us to no other policy provision that would support ACE's coverage of Safway's agreement to pay NIPSCO's attorney fees if Safway breached the Safway Agreement. Accordingly, we reverse the trial court's order with respect to ACE's coverage for the attorney fees NIPSCO incurred in this suit.

---

[18] NIPSCO and the trial court attribute this language to *Thomson*, 11 N.E.3d at 1025, but we do not find it in that opinion. The phrase appears in *Association of Apartment Owners of Moorings, Inc. v. Dongbu Insurance Company, Ltd.*, 731 F.App'x 713, 714 (9th Cir. 2018) (mem.), which NIPSCO cited in its reply in support of its motion for damages. *See Appellant's App. Vol. 14* at 124.

## Conclusion

[92] Safway breached its duty to defend NIPSCO in the underlying lawsuit. As damages for the breach, the trial court did not err in ordering Safway to pay the defense costs NIPSCO incurred in the underlying lawsuit after Safway ceased defending NIPSCO. We affirm the trial court's judgment these are covered under the ACE-Safway Policy, subject to the applicable deductible. NIPSCO's attorney fees and costs incurred in bringing this action are not defense costs, but the trial court did not err in ordering Safway to pay them under the fee-shifting provision of the Safway Agreement. But we reverse the trial court's finding that ACE provided insurance coverage for the attorney fees in this action. Finally, we remand for clarification on the sum of damages awarded and for further proceedings consistent with this opinion.

[93] Affirmed in part, reversed in part, and remanded.

Brown, J., and Mathias, J., concur.

ATTORNEYS FOR APPELLANT/CROSS-APPELLEE

George M. Plews
Jeffrey D. Featherstun
Andrea K. Townsend
Joanne R. Sommers
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT ACE AMERICAN INSURANCE COMPANY

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Matthew S. Ponzi
John Eggum
Foran Glennon Palandech Ponzi & Rudloff PC
Chicago, Illinois


ATTORNEYS FOR APPELLEE/CROSS-APPELLANT SAFWAY SERVICES, LLC

Lucy R. Dollens
Elizabeth A. Trachtman
Quarles & Brady LLP
Indianapolis, Indiana

Anthony P. Steinike
Quarles & Brady LLP
Chicago, Illinois

Lora L. LoCoco
Quarles & Brady LLP
Milwaukee, Wisconsin

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT HEADWATERS RESOURCES, INC.

Robert Foos Jr.
Michael R. Giordano
Lewis Wagner, LLP
Indianapolis, Indiana